**UNITED STATES of America, Appellant,**

**v.**

**James GRIBBEN and Carlos Maldonado, Defendants–Appellees.**

**No. 399, Docket 92–1335.**

United States Court of Appeals, Second Circuit.

Argued Nov. 13, 1992.

Decided Jan. 13, 1993.

---

G. Gardephe, Asst. U.S. Atty., of counsel), for appellant.

Raymond E. Kerno, Lake Success, NY (Lysaght, Lysaght & Kramer, P.C., Lake Success, NY, Stuart London, Rye Brook, NY (Atty. for appellee James Gribben), Stephen C. Worth, Hession, Bekoff & Worth, Mineola, NY (Atty. for appellee Carlos Maldonado), of counsel), for defendants-appellees.

Before: NEWMAN, KEARSE and CARDAMONE, Circuit Judges.

CARDAMONE, Circuit Judge:

The circumstances of what would have been an otherwise routine arrest by two New York City police officers is before us because of their unexpected conduct in allegedly fabricating the details of the incident. They related the embellished "facts" to an Assistant United States Attorney, a United States Magistrate Judge and a federal grand jury. This embroidered tale led to the prosecution of one Lindsey Calhoun for unlawful possession of a handgun. Following a chance discovery of the truth, the two officers were indicted for the crimes of perjury and making false statements. It is not only the public, but also the prosecutor, magistrate judge, regular grand jury, petit jury, and district court, that must rely upon the credibility of police officers. Whether to prosecute, issue a warrant, indict and convict are serious matters that are decided in large measure based on what a police officer relates. So when an officer does not tell the whole truth, public confidence in the fair administration of criminal justice inevitably is eroded.

Officers James Gribben and Carlos Maldonado were charged in a superseding indictment containing six substantive and conspiracy counts that alleged each of them committed perjury and made false statements. On May 21, 1992 they obtained an order from the United States District Court for the Southern District of New York (Duffy, J.) dismissing a portion of the indictment, which the district court granted grounded on its belief that the police officers' statements were not materi-

Steven A. Standiford, Asst. U.S. Atty., S.D. of N.Y. (Otto G. Obermaier, U.S. Atty. for the S.D. of N.Y., New York City, Paul

al. 792 F.Supp. 960. The government insists this ruling announces a new rule that holds whatever version police officers give of the salient "facts" relating to an alleged crime is not material, so long as the suspect faces the same criminal charge he would have faced had the real facts been told.

## BACKGROUND

The incident which led to the officers' indictment occurred on May 17, 1991 when Officers Gribben and Maldonado were called to the Parkchester South Condominium in the Bronx, New York, to respond to a report of a domestic dispute involving a handgun. The officers and condominium security guards went to the apartment where the dispute had taken place, and there, in the hallway outside the apartment, found Lindsey Calhoun. During the brief encounter the police officers recovered a Smith and Wesson .38 caliber handgun from him. Calhoun was arrested, and later became the subject of state and federal prosecutions related to his possession of that weapon. On the day of Calhoun's arrest Gribben wrote and filed a "Stop and Frisk Report" and a "Complaint Report" describing the arrest. He stated that he seized the handgun from Calhoun's waistband after the suspect made a move toward his waist.

Assistant United States Attorney (AUSA) Cari Robinson of the Southern District of New York was assigned to investigate and prosecute Calhoun's case. On June 6, 1991 she met with Officer Gribben who, repeating the story contained in his written report, told her that he seized the gun from Calhoun's waistband. Based on this interview, she drafted a magistrate's complaint charging Calhoun with illegal possession of a handgun in violation of 18 U.S.C. § 922(g)(1) (1988). That day the same officer appeared before a United States magistrate judge and swore to the truth of the complaint, including a declaration regarding the seizure of the Smith and Wesson from Calhoun's waist. Two weeks later, on June 19, 1991, the AUSA interviewed Officer Maldonado regarding Cal-

houn's arrest. He told her that he did not actually see his partner seize the weapon because he had his back turned. Officer Maldonado also told AUSA Robinson that he heard Officer Gribben gasp, turned around and saw him standing next to Calhoun holding a gun.

The suspect's case went before the regular grand jury, and on June 21, 1991 Officer Gribben testified before that body that he seized the handgun from Calhoun's waist. The grand jury returned an indictment against Calhoun. At his bail hearing before a district court judge on July 23, 1991 a sharply different version of the arrest surfaced. Defense counsel stated the handgun had not been recovered from his client's person but from a black bag he was carrying.

After receiving this new information, the AUSA interviewed Officer Maldonado again. He gave essentially the same version of the arrest as he had at his first interview. The prosecutor next spoke with a condominium security guard present at the scene of Calhoun's arrest. The guard stated that another security guard had retrieved the gun from a bag Calhoun had been carrying, and that both police officers had seen the guard retrieve the gun. As a result of this new information a four-count indictment originally was laid against Officers Gribben and Maldonado. A superseding indictment—the one now before us, filed on January 27, 1992—included six counts against the two officers.

Count one charges Gribben and Maldonado with a conspiracy both to commit perjury and to make false statements to federal officials in violation of 18 U.S.C. § 371 (1988). Charges outlined in counts two through six constitute the overt substantive acts furthering the alleged conspiracy. Count two accuses Gribben of covering up a material fact and making a false statement to the AUSA in violation of 18 U.S.C. § 1001 (1988). That statute provides, in relevant part, that

[w]hoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any

trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, ... shall be fined not more than $10,000 or imprisoned not more than five years, or both.

18 U.S.C. § 1001. Counts four and five allege that Maldonado violated § 1001 by covering up material facts and making false statements during his two interviews with AUSA Robinson.

Count three charges Gribben with perjury for making a false statement before the magistrate judge in violation of 18 U.S.C. § 1623(a) (1988), and count six makes the same charge against the same defendant based on his testimony before the grand jury. Section 1623(a) provides, in relevant part, that

> [w]hoever under oath ... in any proceeding before or ancillary *to any court or grand jury of the United States knowingly makes any false material declaration* ... shall be fined not more than $10,000 or imprisoned not more than five years, or both. (emphasis added).

18 U.S.C. § 1623(a).

Maldonado made a motion, which Gribben joined, to dismiss the indictment. After hearing oral argument, the district court issued a memorandum and order dated May 21, 1992 dismissing the perjury charges—contained in counts three and six—against Gribben and dismissing counts two, four and five to the extent that they charged the officers with covering up a material fact in violation of § 1001. The district court ruled that the alleged misrepresentations were not "material" in the prosecution of Calhoun for possession of a weapon. It left intact the conspiracy charge in count one and those parts of counts two, four and five accusing Gribben and Maldonado of making false statements in violation of § 1001.

Specifically, the district court ruled that the government "has simply not met its burden of demonstrating materiality" because "the charge against Calhoun would not have been any different had the officers' testimony been as the Government alleges it should have been." In other words, the district judge hinged his materiality determination on the fact that Calhoun could have been charged with illegal possession of a handgun whether the gun was recovered from his waistband or from the black bag. The government appeals. We reverse.

## DISCUSSION

### A. *Standard for Materiality*

The clear terms of the statutes make materiality an element of offenses charged under 18 U.S.C. § 1623 and, insofar as pertinent to this case, that portion of 18 U.S.C. § 1001 dealing with covering up material facts. Materiality of evidence is not an element of making a false statement under § 1001, *United States v. Bilzerian*, 926 F.2d 1285, 1299 (2d Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 63, 116 L.Ed.2d 39 (1991) (materiality of false statement not element of offense under § 1001), which is why the district court left undisturbed those portions of counts two, four and five. To be convicted of perjury a defendant must knowingly make a "false material declaration" before any court or grand jury of the United States. 18 U.S.C. § 1623(a). To be convicted of making a false statement a defendant must "knowingly ... cover[ ]up ... a material fact" in any matter within the provision of any agency of the United States. 18 U.S.C. § 1001.

Materiality questions raised at trial are decided by the trial court as part of its function of presiding at the trial. *See* 9 John H. Wigmore, Evidence § 2549 (3d ed. 1940). Materiality of a false statement as an element of the crime of perjury is a question of law for the district court to decide, not a question of fact for a jury. *See Sinclair v. United States*, 279 U.S. 263, 298, 49 S.Ct. 268, 273, 73 L.Ed. 692 (1929); *United States v. Guariglia*, 962 F.2d 160, 163 (2d Cir.1992) (applying 18 U.S.C. § 1623). Hence, when reviewing such a question an appellate court may substitute its judgment for that of the trial court. *See United States v. Moon*, 718 F.2d 1210, 1237 (2d Cir.1983), *cert. denied*, 466 U.S. 971, 104 S.Ct. 2344, 80 L.Ed.2d 818

(1984). The government bears of course the burden of proving materiality, but its burden need not be "beyond a reasonable doubt;" the burden is satisfied by a preponderance of the evidence, *see United States v. Cunningham*, 723 F.2d 217, 226 (2d Cir.1983), *cert. denied*, 466 U.S. 951, 104 S.Ct. 2154, 80 L.Ed.2d 540 (1984); *United States v. Byrnes*, 644 F.2d 107, 111 (2d Cir.1981).

The test for determining materiality originated in a prohibition-era case. *See Carroll v. United States*, 16 F.2d 951, 952–53 (2d Cir.), *cert. denied*, 273 U.S. 763, 47 S.Ct. 477, 71 L.Ed. 880 (1927). Evidence in that case persuaded a jury that in the early morning hours of February 23, 1926 a bathtub standing at the side of the stage of the Earl Carroll Theater in Manhattan was moved to the center of the stage, next to the defendant Carroll, and there filled with a beverage. A Miss Hawley, dressed only in a chemise, came from the wings, slipped out of her garment and, naked, stepped into the bathtub. Carroll announced "the line forms to the right," and 15 or 20 men passing by the tub filled their glasses with the bathtub's liquid contents. Witnesses testified that the beverage that they drank, which had come from the tub, was champagne. When the defendant appeared before the grand jury, he testified falsely that there was no woman in his bathtub and that it was not filled with champagne anyway, but only with ginger ale. For this testimony he was indicted for perjury.

After reviewing these colorful facts, we affirmed Carroll's perjury conviction. The identity of Miss Hawley, though unrelated to the crime of serving liquor illegally during prohibition, was material to the grand jury because one actually in a bathtub would know whether it was filled with champagne. At the same time the standard for materiality to which we still adhere was announced. The test "is whether the false testimony has a natural effect or tendency to influence, impede, or dissuade the grand jury from pursuing its investigation." *See Carroll*, 16 F.2d at 953. *See also Kungys v. United States*, 485 U.S. 759, 770, 108 S.Ct. 1537, 1546, 99 L.Ed.2d 839 (1988) (adopting *Carroll* formulation of materiality as prevailing standard). Cases interpreting this standard acknowledge its breadth in the context of government investigations. In *Moon*, we stated that "[m]ateriality is demonstrated if the question posed is such that a truthful response could potentially aid the inquiry or a false answer hinder it." 718 F.2d at 1237. *See also United States v. Berardi*, 629 F.2d 723, 728 (2d Cir.), *cert. denied*, 449 U.S. 995, 101 S.Ct. 534, 66 L.Ed.2d 293 (1980); *Byrnes*, 644 F.2d at 111.

■ Because the grand jury is charged with investigating crime, what is or is not material to its investigative function is broadly construed. Matters arguably cumulative or collateral to the grand jury's objective in a given case are considered for their *potential* to aid that body, not for the *probability* of assistance from a truthful answer. *See United States v. Kiszewski*, 877 F.2d 210, 218 (2d Cir.1989). That is to say, the standard is not whether a perjurious answer with respect to a charge of covering up the facts would likely have resulted in a wrong decision by the grand jury, but rather whether it had the potential or a natural tendency to affect or influence the grand jury in, or impede or dissuade it from, pursuing its investigation. *See id.* at 218.

### B. *Application of Standard*

■ Applying this standard to the facts at bar, it is clear that the alleged fabrications by Officers Gribben and Maldonado about the retrieval of Calhoun's gun were material to those investigating Calhoun's arrest. The district court arrived at the opposite conclusion because Calhoun could have been charged with illegal possession of a handgun whether the gun was retrieved from his waistband, as Officer Gribben reported, or from a bag he was carrying, as the condominium security guard stated. In looking only to the ultimate charge filed against Calhoun, the district court incorrectly narrowed the materiality inquiry. The government insists, and we agree, that the alleged false statements could tend to "influence, impede or dis-

suade" the various decisionmakers in the Calhoun case.

Gribben's statements to the AUSA, the grand jury and the magistrate judge could be influential in several respects. First, if Gribben had reported from the start in his written reports and subsequent oral reports that the handgun had been retrieved from a bag and not from Calhoun's waistband, prosecutors may have decided not to pursue the case. Calhoun was charged in the complaint and later indicted for "unlawfully, wilfully and knowingly" possessing a handgun. While concededly this charge would be supported by either version of the facts of Calhoun's arrest, it is easier for the government to prove knowledge of the gun's presence when a defendant is wearing it at his waist, than when he is carrying it in a bulky bag where he might more plausibly assert lack of knowledge. The central issue of knowledge affects proof of possession. These considerations could have influenced AUSA Robinson in her exercise of prosecutorial discretion. Such information also could have impacted the grand jury when it voted to indict Calhoun. That body may well have been dissuaded from voting the indictment against him had it known he was not carrying the weapon on his person. In fact, the government states that it intends to present this theory as the officers' motive for lying.

Second, Gribben's alleged false statements to the grand jury and federal officials influenced their decision-making because the truth would have alerted them to the inconsistency between Gribben's testimony and the written reports he filed on the day of Calhoun's arrest. This inconsistency would have affected the decisionmakers because they relied on Gribben's credibility as to his significant allegations in reaching various determinations. Moreover, the alleged false statements potentially hindered the Calhoun investigation because they covered up the fact that additional witnesses—the condominium security guards—should also have been interviewed.

Further, the allegedly false statements made by Officer Maldonado were material for similar reasons. On two occasions, Maldonado reported to the AUSA that he did not see who retrieved the handgun, but did see Gribben holding the gun while standing next to Calhoun. The condominium security guard told a totally different story. Maldonado's false statements influenced the Calhoun prosecution because he too covered up the fact that the gun was not retrieved from Calhoun's waist. His statement also hindered the investigation by not revealing that the security guards should be interviewed. Perhaps most importantly, Maldonado's comments corroborated Gribben's story, while the truth would have called Gribben's credibility into question and perhaps changed the government's decision to prosecute Calhoun.

Finally, our conclusion on materiality is reinforced by the policy consideration that the police must be dedicated, in our democratic society, to exercising the authority of their office in a manner that protects the constitutional rights of suspects and encourages respect for the rule of law by its proper enforcement. B. James George, Jr., et al., *Urban Police Function*, I ABA Standards for Criminal Justice 1–52, –53 (2d ed. 1986). The officers' conduct here ignored that policy.

## CONCLUSION

Consequently, the allegedly false statements made by Officers Gribben and Maldonado were material because they tended to influence, impede or dissuade the government's investigation and prosecution of Lindsey Calhoun. The district court's order dismissing counts three and six in their entirety and portions of counts two, four and five is reversed. The six-count superseding indictment is reinstated in its entirety.