**UNITED STATES of America, Appellee,**

v.

**Laura KROSS, Defendant–Appellant.**

No. 347, Docket 93–1182.

United States Court of Appeals,
Second Circuit.

Argued Oct. 12, 1993.

Decided Jan. 18, 1994.

William K. Sessions III, Middlebury, VT (Sessions, Keiner, Dumont, Barnes & Everitt, P.C., of counsel), for defendant-appellant.

Gregory L. Waples, Asst. U.S. Atty., Burlington, VT (Charles A. Caruso, U.S. Atty., David V. Kirby, Chief, Crim. Div., of counsel), for appellee.

Before: NEWMAN, Chief Judge, FEINBERG, Circuit Judge and POLLAK, District Judge.*

* Honorable Louis H. Pollak, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

FEINBERG, Circuit Judge:

Laura Kross appeals from a judgment of conviction entered in March 1993, after a jury trial in the United States District Court for the District of Vermont before Franklin S. Billings, Jr., J. Kross was indicted on five counts of making false declarations in a civil deposition in violation of 18 U.S.C. § 1623, and the jury found her guilty on three counts. The Sentencing Guidelines called for a range of 15–21 months in prison, but the district judge departed downward six levels and sentenced Kross to three concurrent terms of three years probation. Kross argues on appeal that the district judge erred in denying her motion to dismiss the indictment on various grounds. For the reasons set forth below, we affirm.

## I. Factual Background

Earth People's Park (the Park), a 592–acre parcel of land in the extreme northeastern corner of Vermont, is owned by Earth People's Park, Inc., a California corporation (the Corporation). Since the founding of the Park in 1970, the Corporation has allowed people to come to the Park at no charge in order to live in harmony with nature. Kross resided in the Park from 1971 to 1979, when she moved to nearby Brownington, Vermont.

In 1990, the United States filed a civil forfeiture complaint against the Park pursuant to 21 U.S.C. § 881(a)(7). United States v. Earth People's Park, Consisting of 592 Acres, More or Less, Located in Norton, Vermont, with all Appurtenances and Attachments Thereon, Civil No. 90–273 (D.Vt.) (pending). The United States sought forfeiture on the grounds that the property was being used for the cultivation and distribution of marijuana. The Corporation asserted the defense of innocent ownership, claiming that it had no knowledge of illegal drug-related activity at the Park.

The Assistant United States Attorney conducting the forfeiture litigation deposed Kross in January 1991, at which time she was accompanied by an attorney representing the Corporation. The testimony of Kross at the

deposition formed the basis for the three counts of the indictment (Counts III, IV and V) on which she was convicted. Count III set forth her responses to questions about her knowledge of illegal drug use in the Park, as follows:[1]

Q: Did you ever see anyone smoking marijuana in the Park?

A: *Not to the best of my recollection. When I lived up there, I kept pretty much to myself.*

    \*    \*    \*    \*    \*    \*

Q: With regard to Koslosky, Greenip and Brown and Gagliola,[2] did you ever see them smoking marijuana in the Park?

A: *No, uh-uh.*

Q: Do you have any information as to whether they did smoke marijuana in the Park?

A: *No, nobody's ever come and said that to me.*

Count IV concerned her knowledge of marijuana cultivation in the Park:

Q: Did you ever see anyone grow marijuana on [Earth People's] Park property?

A: *No.*

Q: Even if you didn't see anyone grow it. Did you ever see anyone grow it there?

A: *No. It's a big 600 acres.*

    \*    \*    \*    \*    \*    \*

Q: Did you ever have any information about [Koslosky, Greenip, Brown and Gagliola] growing marijuana in the Park?

A: *Definitely not.*

Count V concerned her prior criminal history:

Q: Have you ever been arrested?

A: *No.*

Q: Have you ever been charged by State or Federal authorities with any crime?

A: *No.*

Q: Really, I'm not asking whether you've been convicted; I'm asking whether you've been charged?

A: *No, not that I remember.*

At trial, the government presented testimony to show that Kross was aware of the use and cultivation of the marijuana by Park residents. Evidence also showed that Kross had been charged with felonies in Vermont state court in 1980 and 1990.

## II. Discussion

Kross argues that the district court erred in denying her pretrial motion to dismiss the indictment on the grounds that the information sought in the deposition was immaterial to the underlying forfeiture proceeding, that the deposition questions at issue were fundamentally ambiguous and that her statements were literally true.

### A. Materiality

Section 1623(a) of Title 18 of the United States Code provides, in relevant part:

> Whoever under oath (or in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false *material* declaration ... shall be fined not more than $10,000 or imprisoned not more than five years, or both. (Emphasis supplied).

Kross contends that the indictment should have been dismissed because none of her allegedly false declarations were material to the civil forfeiture action. We disagree.

We have consistently held in the grand jury context that a false declaration is "material" within the meaning of § 1623 when it has "'a natural effect or tendency to influence, impede or dissuade the grand jury from pursuing its investigation.'" *United States v. Kiszewski*, 877 F.2d 210, 218 (2d

---

1. In this and the other counts, the emphasized portions were charged to be perjurious.

2. According to the government, David Koslosky, Paul Greenip and James Gagliola, who resided at the Park at the time it was seized in 1990, have pleaded guilty to federal charges based on marijuana-related activities at the Park.

Cir.1989) (quoting *United States v. Berardi*, 629 F.2d 723, 728 (2d Cir.), *cert. denied*, 449 U.S. 995, 101 S.Ct. 534, 66 L.Ed.2d 293 (1980)). We have pointed out that in a § 1623 prosecution for false declarations to a grand jury,

> [m]atters arguably cumulative or collateral to the grand jury's objective in a given case are considered for their *potential* to aid that body, not for the *probability* of assistance from a truthful answer.

*United States v. Gribben*, 984 F.2d 47, 51 (2d Cir.1993). Because the grand jury's function is investigative, materiality in that context is "broadly construed." *Id.* However, we have apparently not yet addressed the issue of materiality under § 1623 in the context of a deposition in a civil matter. The purpose of civil discovery is also investigative, and the scope of discovery includes any information that "appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1).

The Fifth Circuit has held that for purposes of § 1623, materiality in a civil discovery deposition is not limited to evidence admissible at trial, but includes matters properly the subject of and material to a deposition under Rule 26(b)(1). *United States v. Holley*, 942 F.2d 916, 924 (5th Cir.1991), *cert. denied*, —— U.S. ——, 114 S.Ct. 77, 126 L.Ed.2d 45 (1993). The Ninth and Sixth Circuits have also adapted a materiality definition under § 1623 to the civil deposition context. See *United States v. Clark*, 918 F.2d 843, 846 (9th Cir.1990); *United States v. Adams*, 870 F.2d 1140, 1146–48 (6th Cir. 1989). But the resultant definition is considerably narrower than that of the Fifth Circuit: it requires not merely discoverability under Rule 26(b)(1), but also the tendency of the false statement itself to affect the outcome of the underlying civil suit for which the deposition was taken. See *Clark*, 918 F.2d at 847; *Adams*, 870 F.2d at 1147.

■ The facts of the present case favor a broad construction of the definition of materiality similar to the approach we have already used in the grand jury context. While a government deposition in a forfeiture action under 21 U.S.C. § 881 is civil in form, forfeiture actions are predicated upon a nex-

us between the property and criminal activity. See *United States v. Premises and Real Property at 4492 S. Livonia Rd.*, 889 F.2d 1258, 1269 (2d Cir.1989), *reh'g denied*, 897 F.2d 659 (1990). Under the circumstances of this case, we see no persuasive reason not to apply the broad standard for materiality of whether a truthful answer might reasonably be calculated to lead to the discovery of evidence admissible at the trial of the underlying suit.

■ We turn now to apply this broad standard to the facts of this case. With respect to Counts III and IV, Kross maintains that she was not an agent of the Corporation. Therefore, she argues, any knowledge she may have had concerning drug use or cultivation at the Park was not attributable to the Corporation and was thus immaterial to the forfeiture proceeding against the Corporation. At the time the questions were asked, however, the government was entitled to explore her knowledge based on the theory that she was an agent. Certainly, Kross' denial of agency would not end the matter, in view of evidence that she had represented herself to the Assistant conducting the deposition as the agent of the Corporation and had acted as its agent in the past. In any case, even if Kross was not the Corporation's agent, the information sought was material in that it concerned not only her *knowledge* of drug activity at the Park, but also the *existence* of drug activity.

■ As to Count III, Kross further argues that the information sought was immaterial to the forfeiture suit because marijuana smoking is not a felony justifying forfeiture under Title 21. Thus, she argues, even if she had testified that she had knowledge of marijuana smoking, that would not have demonstrated that the Park was being used to facilitate the more serious narcotics crimes that could justify a forfeiture. We disagree with this reasoning. It is true that neither marijuana smoking nor knowledge thereof constitutes independent grounds for civil forfeiture. Nevertheless, evidence of marijuana smoking on Park property was material at the discovery stage of the forfeiture proceeding because such evidence might lead to evi-

dence of cultivation or distribution of marijuana, which would justify forfeiture.

With respect to Count IV, Kross also argues that she "could reasonably have understood" the questions to refer to the time when she lived in the Park in the 1970s. Thus, she claims, her answer about marijuana cultivation was immaterial because it did not concern the drug crimes that formed the basis for the 1990 forfeiture proceeding, but rather concerned activity predating the five-year statute of limitations period for § 881 forfeiture actions. Kross' argument is unconvincing, however, because the questioner clearly asked Kross if she had "ever" seen or had information about marijuana cultivation in the Park. In addition, as the district court correctly found,

> Although evidence of pre–1985 drug crimes could not legally constitute a basis for forfeiture, evidence that [the Corporation] knew of illegal pre–1985 drug activity could certainly have led to information that the [C]orporation was not an "innocent owner," as well as an inference that the [C]orporation failed to satisfy its affirmative duty to safeguard the property from further drug activity.

Furthermore, the prior marijuana cultivation, while not the basis for the forfeiture proceeding, is nonetheless relevant to discovery regarding the later cultivation that did form the basis for the proceeding.

With respect to Count V, Kross argues that the statements regarding her prior criminal history were not material because they could have produced no useful testimony. Furthermore, she argues, the Assistant United States Attorney already knew of the prior charges against her.

■ Turning to the latter argument first, whether the questioner knows the answer to a question is irrelevant to materiality. Cf. *United States v. Lee,* 509 F.2d 645, 646 (2d Cir.) (per curiam), *cert. denied,* 422 U.S. 1044, 95 S.Ct. 2645, 45 L.Ed.2d 696 (1975). As to the usefulness of truthful responses, the 1990 charges eventually resulted in a conviction. Since Kross was convicted of welfare fraud, a crime involving "dishonesty or false statement," evidence of the convic-

tion might have been admissible at trial of the forfeiture action to impeach Kross's credibility if she were a witness. Fed.R.Evid. 609(a)(2). Though matters relating to the credibility of a prospective witness might not always be material within the meaning of the perjury statute, see *United States v. Freedman,* 445 F.2d 1220, 1227–28 (2d Cir.1971), in this case there was evidence that Kross represented herself to the prosecutor as an agent of the owner of the defendant property. In such circumstances, matters affecting her credibility were material. Cf. *United States v. Salinas,* 923 F.2d 339, 340–41 (5th Cir.1991) (witness's credibility material where witness was defendant in underlying action); *United States v. Sablosky,* 810 F.2d 167, 169 (8th Cir.1987) (same).

Although the 1980 charges were ultimately dismissed, the charges concerned marijuana possession. Thus, truthful testimony concerning those charges might have led to evidence of other drug-related activity by Kross.

### B. Ambiguity

■ Kross contends that her statements referred to in Counts III and IV of the indictment cannot have been perjurious because the questions asked were fundamentally ambiguous. She argues that because the questions were asked in the context of other questions about the year 1975, she assumed the questions referred to marijuana smoking and cultivation in the year 1975. According to Kross, the indictment alleges that she grew marijuana sometime between *1976* and 1990 and thus fails to allege that her answer was false.

While it is true that answers to "fundamentally ambiguous" questioning may be insufficient to support a perjury conviction, *United States v. Lighte,* 782 F.2d 367, 375 (2d Cir.1986), Kross' argument is wholly without merit. The indictment in fact alleges that Kross knew of and participated in marijuana cultivation between 1975 and 1990. Moreover, in both instances, the questioner clearly asked Kross if she had *"ever"* seen anyone

smoking or growing marijuana in the Park. We agree with the district court that "ever" is not an imprecise word.

### C. Literal Truth

Kross argues that her answer to the third question in Count III, "No, nobody's ever come and said that to me," was "literally true," if unresponsive, and thus could not have constituted perjury. *United States v. Lighte*, 782 F.2d at 373–74. She claims the statement was true because no one ever *told* her that Koslosky, Greenip, Brown, and Gagliola were smoking marijuana in the Park. Kross advances the same argument with respect to her answer to the third question in Count IV, concerning whether she had information about the four men growing marijuana in the Park. She claims that by her answer, she meant that no one had told her about growing marijuana.

We reject this argument. Even assuming that her answer to the third question in Count III was literally true, the count also includes two questions and answers on the same topic which were answered responsively in the negative. As for Count IV, the "literal truth" argument is preposterous, since Kross gave the fully responsive and unequivocal answer, "Definitely not" to a question that asked her whether she *ever* had *any* information about the four men growing marijuana in the Park.

We have examined all of appellant's arguments and find them to be without merit. The judgment of conviction is affirmed.