**UNITED STATES of America,**
**Appellee,**

v.

**Omar CORNIELLE, Defendant,**

**Melvin Feliz, Defendant–Appellant.**

**Docket No. 98–1254.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 2, 1998.
Decided March 24, 1999.

Joshua G. Berman, Assistant United States Attorney, New York, New York (Mary Jo White, United States Attorney, Alexandra A.E. Shapiro, Assistant United States Attorney, Southern District of New York, New York, New York, of counsel), for Appellee.

Noah L. Shube, New York, New York (Law Offices of Gary B. Friedman, New York, New York, of counsel), for Defendant–Appellant.

Before: NEWMAN, CARDAMONE, and PARKER, Circuit Judges.

CARDAMONE, Circuit Judge:

We deal on this appeal with a criminal conviction for perjury, 18 U.S.C. § 1623 (1994), that occurred during the course of a civil trial in which the perjurer sought to collect money damages. The perjury is not disputed. Instead, the issue raised is whether the government's four-year delay in prosecuting defendant Melvin Feliz[1]— during which defendant, having been released from prison, had ostensibly rehabilitated himself and reestablished ties to his community—violated defendant's right to due process of law. Following a guilty plea to perjury, defendant appeals from his sentence entered on April 27, 1998 in the United States District Court for the Southern District of New York before Judge Jed S. Rakoff.

---

1. Defendant is named in indictment 97 CR 908 as Melvin Feliz. However, the correct spelling of defendant's last name is Feliz. *See* Record on Appeal, Doc. 11 at 3.

## BACKGROUND

### A. Defendant's Criminal Conduct

Defendant was arrested on August 16, 1988 for his involvement in a narcotics sale to an undercover detective with the New York Drug Enforcement Task Force. In May 1989 Feliz and his co-conspirators, including his brother-in-law Omar Cornielle, pled guilty in New York State Supreme Court to drug offenses. For these crimes, Feliz was sentenced to state prison for a term of seven years to life. Cornielle was sentenced to terms of three years and six years to life, respectively, on convictions for the August 16, 1988 sale and for a prior, related drug sale.

In early spring 1989 Feliz, Cornielle and a third person, who was also arrested on August 16, 1988, brought civil rights lawsuits, *pro se*, pursuant to 42 U.S.C. § 1983, against several of the New York Drug Enforcement Task Force officers alleging police brutality during the arrest. In August 1993 the civil suit went to trial before District Court Judge John S. Martin, Jr. and a jury in the Southern District of New York. Feliz and Cornielle asserted in their testimony that in the course of the arrest the police had beaten them. Feliz also declared under oath that Cornielle had not been involved in the August 16, 1988 drug sale. That sworn statement directly contradicted the plea allocution Feliz had made in the New York State Supreme Court criminal proceedings. The jury returned a verdict for the Task Force officers.

At the conclusion of the civil trial, Judge Martin was of the opinion that Feliz and Cornielle had perjured themselves at the trial before him and referred the matter to the United States Attorney's Office for it to consider whether to prosecute them for perjury.

### B. Feliz's Guilty Plea and Sentencing

On August 19, 1997 the Southern District U.S. Attorney's Office filed criminal complaints charging both Feliz and Cornielle with perjury in connection with their testimony during the August 1993 civil trial. On September 11, 1997 a grand jury indicted them charging each of them with two counts of perjury in violation of 18 U.S.C. § 1623. Feliz pled guilty to count four of the indictment on November 25, 1997, admitting he falsely declared that Cornielle had not been involved in the August 1988 drug sale.

Following Feliz's guilty plea, the U.S. Probation Office prepared a Presentence Investigation Report that proposed a sentencing range of ten to 16 months imprisonment, with no recommendation for any downward departure. Defendant's attorney sought a downward departure for him on five grounds: (1) the government's preindictment delay in prosecuting him; (2) Feliz's rehabilitation while in state prison and thereafter; (3) his mitigating role in the offense; (4) his assistance to the prosecution in securing Cornielle's guilty plea; and (5) his criminal history category overrepresented the seriousness of his criminal history. With respect to his claims of preindictment delay and rehabilitation, Feliz averred he had been prejudiced by the four-year delay between the 1993 perjury and the filing of perjury charges against him in 1997, because in the meanwhile he had rehabilitated himself and reestablished his ties in the community. The government opposed a downward departure.

Defendant was subsequently sentenced before Judge Rakoff on April 27, 1998. At this proceeding, the sentencing court ruled that none of the grounds advanced independently warranted a downward departure.

The record before the sentencing court regarding defendant's claim of rehabilitation revealed that prior to being placed on parole from state prison on August 14, 1995 Feliz had spent eight months in a work release program. The various organizations for whom he worked during this period uniformly described him in the most glowing terms: hard working, conscientious, respectful, productive, driven to

improve himself, responsible and entirely trustworthy. Even his parole officer wrote a letter on his behalf reciting that Feliz reported regularly, that he had a stable residence and stable employment, and that there were no negative reports about him from any local law enforcement agency. After release from prison, he married and at the time of his 1998 sentencing for perjury his pregnant wife was present. In addition, Feliz had returned to college and earned all "A's" and "B's" and had undertaken volunteer work for PROMESA, a Bronx-based Health, Human Services and Development Organization, where he counseled HIV-infected residents.

The sentencing court leavened these letters and took them, so to speak, with a grain of salt, because statements in some of them suggested the writers did not know the facts of Feliz's case, and that defendant had perhaps not portrayed to these writers an accurate account of what had occurred in the criminal prosecution against him. In short, the sentencing court believed the defendant had a tendency to manipulate the information regarding his background to make it appear consistent with the model picture of total rehabilitation that defense counsel was urging and that the letters portrayed.

Nonetheless, considering the totality of Feliz's circumstances, the trial court granted a one-level downward departure. The sentencing court stated that the facts in appellant's case were sufficiently extraordinary to warrant a modest departure. The one-level departure reduced defendant's sentence range from ten to 16 months to eight to 14 months imprisonment. Judge Rakoff then sentenced Feliz to a term of eight months, the bottom end of the adjusted range. It is from this sentence that defendant appeals. We affirm.

## DISCUSSION

### I Due Process Claim

At the outset we observe that although it is undoubtedly the case that a good many untruthful statements occur during the course of a civil trial, many such falsehoods essentially are resolved by adverse jury verdicts, leaving for criminal prosecution those few instances where a witness' lie is so material to the truth-seeking function of a trial that the prosecutor (sometimes, upon the referral of the trial judge) elects to seek an indictment. Such is the present case. Moreover, that this criminal conviction for perjury arose in a civil context is unremarkable. We and other Circuits have reviewed perjury convictions arising from civil proceedings. *See, e.g., United States v. Thompson*, 29 F.3d 62 (2d Cir.1994) (one count of perjury in connection with separate civil judicial proceeding); *United States v. Kross*, 14 F.3d 751 (2d Cir.1994) (false declarations in civil forfeiture deposition); *United States v. Wilkinson*, 137 F.3d 214 (4th Cir.1998) (false statement during deposition in civil case); *United States v. Clark*, 918 F.2d 843 (9th Cir.1990) (false testimony in civil rights suit against police department), *overruled on other grounds by United States v. Keys*, 133 F.3d 1282 (9th Cir. 1998).

### A. Delay

Feliz's contention is that his sentence violates the Due Process Clause of the U.S. Constitution because he was not indicted until four years after the crime for which he was charged was committed. As the Supreme Court stated in *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), the statute of limitations is "'the primary guarantee against bringing overly stale criminal charges.'" *Id.* at 322, 92 S.Ct. 455 (quoting *United States v. Ewell*, 383 U.S. 116, 122, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966)). A set period within which prosecution must be initiated safeguards citizens from standing trial on charges whose underlying facts have grown dim with age, and from having to face possible punishment because of acts

committed in the distant past. *See Toussie v. United States*, 397 U.S. 112, 114–15, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970). Accordingly, we have held that timely brought criminal prosecutions are only rarely dismissed. *See United States v. Lawson*, 683 F.2d 688, 694 (2d Cir.1982). In the present case the indictment was filed in August 1997, four years after Feliz's trial where the perjury occurred and well within the five-year limitations period. Thus, the indictment has a strong presumption of validity.

An indictment brought within the time constraints of the statute may nevertheless violate due process where pre-indictment delay has been shown to cause "substantial prejudice" to the defendant's ability to present his defense and "the delay was an intentional device to gain [a] tactical advantage over the accused." *Marion*, 404 U.S. at 324, 92 S.Ct. 455. As the Supreme Court further has explained, where delay prejudices the presentation of a defense and is engaged in for an improper purpose it violates the Due Process Clause because such conduct departs from fundamental notions of "fair play." *United States v. Lovasco*, 431 U.S. 783, 795, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). A defendant bears the "heavy burden" of proving both that he suffered actual prejudice because of the alleged pre-indictment delay *and* that such delay was a course intentionally pursued by the government for an improper purpose. *See United States v. Scarpa*, 913 F.2d 993, 1014 (2d Cir. 1990); *United States v. Hoo*, 825 F.2d 667, 671 (2d Cir.1987).

Prejudice in this context has meant that sort of deprivation that impairs a defendant's right to a fair trial. *See United States v. Elsbery*, 602 F.2d 1054, 1059 (2d Cir.1979). This kind of prejudice is commonly demonstrated by the loss of documentary evidence or the unavailability of a key witness. *See, e.g., Lovasco*, 431 U.S. at 796, 97 S.Ct. 2044 (accepting defendant's claim of prejudice based on loss of testimony of two material witnesses but

finding no due process violation because delay was not improper); *Marion*, 404 U.S. at 325–26, 92 S.Ct. 455 (rejecting due process claims as speculative and premature, but commenting that "actual prejudice" may be shown if "memories ... dim, witnesses become inaccessible, and evidence [is] lost"). Feliz invites us to consider a new form of proof of prejudice sufficient to show a violation of due process: prejudice due to the extraordinary harm he maintains he will suffer if he is reincarcerated, given that he has fully rehabilitated himself and greatly invested in the community.

### B. *Rehabilitation*

We have not had occasion to address the situation where a defendant insists he has rehabilitated himself after release from prison on state charges, and that he justifiably relied on no further charges being brought because of the passage of time. Appellant points to analogies found in several district court and circuit cases to support his position. In particular, he believes that *United States v. Mercedes*, No. 90 CR. 450, 1997 WL 122785 (S.D.N.Y. Mar.17, 1997) (*Mercedes I*) and *United States v. Mercedes*, No. 90 CR. 450, 1997 WL 458740 (S.D.N.Y. Aug. 12, 1997) (*Mercedes II*) (reaffirming holding of *Mercedes I*) lead to the conclusion that he has sufficiently established prejudice.

In *Mercedes*, the defendant, who was already serving a state sentence of 42 months to life, pled guilty to unrelated federal charges and was sentenced to 30 months imprisonment to be served consecutively to the state sentence. *Mercedes I*, 1997 WL 122785, at *1. After completing his state sentence, the defendant was inadvertently released by state authorities, who inexplicably failed to turn him over to federal authorities to serve the federal sentence. *Id.* Approximately four years later, federal officials recognized the error, rearrested the defendant and attempted to execute his sentence. *Id.* Mercedes filed a

motion to vacate the federal sentence on the ground that the failure to incarcerate him for over three years violated due process. *Id.* at *2.

The district court granted the motion, holding that the government had effectively waived its jurisdiction over the defendant by its delay in executing the sentence. *Id.* at *3–6. However, because *Mercedes* involved delay in the execution of a sentence, an act of executive neglect, rather than pre-indictment delay, its reasoning is not relevant in the pre-indictment context that tests claims of prejudice in light of the congressionally mandated limitations period within which a prosecution must be commenced.

Nor are we persuaded to find prejudice based on the circuit court holdings to which Feliz claims his case is analogous. In *DeWitt v. Ventetoulo*, 6 F.3d 32, 34–36 (1st Cir.1993), the court held that due process was violated by the defendant's reincarceration after he was released on parole and established roots in the community. But *DeWitt* concerned the reimposition of a previously suspended sentence rather than a claim of pre-indictment delay. Further, *Shelton v. Ciccone*, 578 F.2d 1241 (8th Cir.1978), has no applicability. There, the court held that *habeas corpus* petitioner Shelton stated sufficient factors to warrant an evidentiary hearing on whether the government waived jurisdiction. The *Shelton* court was of the view that due process is violated and jurisdiction waived where the federal marshal's failure to execute a detainer warrant was either intentional or the product of gross negligence. *Id.* at 1244–46.

Because we decline to extend the concept of prejudice in the pre-indictment delay context to include the hardship of reincarceration after alleged rehabilitation, it follows that appellant's burden to demonstrate a due process violation has not been met. Having decided there is no prejudice, we need not examine whether the government's reasons for the four-year delay were proper.

## II Sentence

As the sentencing court believed, perjury goes to the very heart of the fair administration of justice. No legal system can long remain viable if lying under oath is treated as no more than a social solecism. Swearing to tell the truth is a solemn oath, the breach of which should have serious consequences, especially where the perjurer tells his lie in an attempt to obtain money damages. The sentencing requirements mandate, among other things, that the sentencing court consider "the need for the sentence imposed to reflect the seriousness of the offense." 18 U.S.C. § 3553(a)(2)(A) (1994). Under the circumstances, the sentencing court ruled a prison sentence was appropriate. We further note that to the extent Feliz's circumstances present an extraordinary one in which he suffered some hardship—not related to a fair trial—due to the government's delay, the district court has already taken it into account in the reduced sentence imposed.

While appellant did not raise due process as an independent argument in the district court, he did argue that he was entitled to a downward departure on five independent grounds, including the government's pre-indictment delay in prosecuting him, and his rehabilitation. However, Judge Rakoff concluded, based on the facts in this case, that a departure was not appropriate on any of these grounds individually. The sentencing court specifically recognized its authority to depart solely on the basis of pre-indictment delay, but declined to do so after concluding that such a departure was inappropriate in this case.

 The sentencing court further stated that although Feliz's request for a downward departure based on extraordinary rehabilitation presented a close question, a departure exclusively on this basis was not warranted in light of all the facts. Such a departure would be within the court's power, since rehabilitation, as we

have had occasion to say with regard to a defendant's drug rehabilitation efforts, may justify a downward departure from the sentencing guidelines range. *See United States v. Maier*, 975 F.2d 944, 948 (2d Cir.1992). Moreover, post-conviction rehabilitation while in prison—Feliz, the defendant before us, was on parole—may serve as a basis for a downward departure. *See United States v. Core*, 125 F.3d 74, 75 (2d Cir.1997). In both of the cited cases, we focused on defendant's successful effort to rehabilitate himself by his own actions as removing the case from the heartland of the more typical cases. *See id.* at 77; *Maier*, 975 F.2d at 948. The efforts made that may entitle defendant to a downward departure must be shown to be extraordinary, *see United States v. Barton*, 76 F.3d 499, 503 (2d Cir.1996), for example, after finishing a prior prison term, defendant had joined the U.S. Army and was honorably discharged thereby entitling him, we agreed, to a two-level downward departure for pre-arrest rehabilitation, *see United States v. Workman*, 80 F.3d 688, 701–02 (2d Cir.1996). Based on the circumstances in this case, however, the sentencing court found that, although it came "close," Feliz's rehabilitation did not meet this standard.

 A sentencing court's decision not to depart from the guidelines is only appealable if it is shown that a violation of law occurred, the Guidelines were misapplied, or the refusal to depart was based on the court's mistaken understanding that it was not authorized to depart. *See United States v. Zapata*, 135 F.3d 844, 846 (2d Cir.1998). In light of our ruling that the claimed violation of law, the Due Process Clause, has not occurred, the district court's decision not to depart solely on the basis of pre-indictment delay or rehabilitation was entirely appropriate.

Nonetheless, the court found that when Feliz's unique combination of circumstances was considered as a whole, his case warranted a one-level departure. Judge Rakoff held that the defendant carried, albeit just barely, his burden of showing that the exceptional circumstances applicable to his particular case, including the pre-indictment delay and rehabilitation, are "sufficiently extraordinary and sufficiently far removed from the heartland of the relevant guidelines as to warrant a modest departure." We see no abuse of Judge Rakoff's discretion in granting only a limited downward departure.

## CONCLUSION

Accordingly, for the reasons stated, we affirm the judgment of conviction and the eight month sentence imposed by the district court.