**UNITED STATES of America,**

v.

**Michael FORDE, et al., Defendants.**

**No. 08 Cr. 0828 (VM).**

United States District Court, S.D. New York.

July 29, 2010.

Lisa R. Zornberg, Mark D. Lanpher, U.S. Attorney's Office, New York, NY, for Plaintiff.

Andrew McCutcheon Lankler, James Kim, Lankler & Carragher, Dino J. Lombardi, Law Office of Dino J. Lombardi, Scott Andrew Resnik, Katten Muchin Rosenman, LLP, Brian L. Gardner, Sullivan Gardner, P.C., James Michael Roth, Hurwitz Stampur & Roth, Steven Kenneth Frankel, Frankel Rudder & Lowery, LLP, New York, NY, John Greaney, James Joseph Culleton, Michael Anthony Marinaccio, Culleton, Marinaccio & Foglia, Bruno Vincent Gioffre, Jr., Law Office of Bruno V. Gioffre, Jr., White Plains, NY, James R. Froccaro, Jr., James R Froccaro Attorney at Law, Port Washington, NY, Jonathan B. Strauss, Brooklyn, NY, Michele Marianna

Bonsignore, Michele Marianna Bonsignore P.C., Yonkers, NY, for Defendants.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

Defendant Joseph Olivieri ("Olivieri") moves to dismiss two counts of the Sixth Superseding Indictment (the "Indictment"): Count Seventeen, charging him with making unlawful payments to labor representatives ("Count Seventeen"), and Count Twenty–Two charging him with perjury in violation of 18 U.S.C. § 1623(a) (" § 1623(a)") ("Count Twenty–Two").[1] Olivieri also requests an in camera inspection of the grand jury minutes, specifically with regard to Count Twenty–Two, and a bill of particulars as to Count Seventeen. According to Olivieri, Count Seventeen should be partially dismissed on statute of limitations grounds and Count Twenty–Two should be dismissed because (1) the statements alleged to be false were previously determined not material to the litigation for which they were made; (2) the questions were so vague as to be fundamentally ambiguous and thus unable to support a perjury conviction, and (3) the statements were literally truth. Olivieri also requests the Court to limit Count Twenty–Two to the alleged false statements as enumerated in the Indictment.

The Government agrees to dismiss from Count Seventeen the alleged payments occurring before 2004 and to provide Olivieri with a bill of particulars. The Government also consents to limit the perjury prosecution to the statements specifically alleged in the Indictment. Accordingly, the Court considers only: the motion to dismiss Count Twenty–Two on grounds of immateriality, literal truth, and fundamental ambiguity, and in the alternative, Olivieri's motion for an in camera inspection of the grand jury minutes. For the reasons set forth below, Olivieri's motion is DENIED.

### I. BACKGROUND [2]

#### A. ALLEGATIONS

On June 30, 2010 the Government filed the Indictment charging Olivieri and five [3] other individuals with labor racketeering offenses, including giving and accepting bribes, conspiracy, perjury, obstruction of justice, and defrauding the United Brotherhood of Carpenters and Joiners, the District Council of New York City and Vicinity (the "District Council"), and the District

---

1. At the time that Olivieri filed the instant motion, his charges were contained in the Fourth Superseding Indictment. The Indictment now in effect adds Olivieri to Count Eight, which charges deprivation of honest services. With respect to Olivieri, the Indictment is otherwise identical in substance to the previously filed indictment. Relevant here, the perjury charge has been renumbered from Count Twenty–Four to Count Twenty–Two.

2. The factual summary that follows derives from the Indictment, and the following documents and any documents or exhibits attached thereto or referenced therein: Memorandum of Law in Support of Motion for Dismissal and Other Relief Regarding Counts Seventeen and Twenty–Four of the Indict-

ment, dated April 2, 2010; the Government's Opposition to the Pretrial Motions of Defendants John Greaney and Joseph Olivieri, dated April 30, 2010; the Reply Memorandum of Law in Further Support of Motion for Dismissal, dated May 24, 2010; and the Government's Sur–Reply in Further Opposition to the Pretrial Motion of Defendant Joseph Olivieri, dated June 2, 2010. Except where specifically referenced, no further citation to these sources will be made.

3. The defendants charged in the Indictment include Michael Forde ("Forde"), John Greaney ("Greaney"), Brian Hayes, Michael Brennan ("Brennan"), and Joseph Ruocco ("Ruocco"). Since the filing of the Indictment, Forde, Greaney, Brennan, and Ruocco have all entered guilty pleas.

Council's benefit funds (the "Benefit Funds").

Olivieri was the Executive Director of the Association of Wall, Ceiling and Carpentry Industries of New York (the "WCCI"). As Executive Director, Olivieri represented more than 160 union contractors belonging to the WCCI, which employed thousands of District Council members annually on jobsites throughout New York City. From about 2000 through 2009, Olivieri was also a trustee of the Benefit Funds.

The Government charges Olivieri in five separate counts of the Indictment. In Count Three, Olivieri is charged with conspiracy to commit wire fraud ("Count Three"). As the basis for the conspiracy charge, the Government alleges that Olivieri and others participated in a scheme with James Murray ("Murray"), the owner of On Par Construction ("On Par"), to defraud the Benefit Funds. The Indictment alleges that Olivieri and others assisted On Par in violating its obligations under its collective bargaining agreement with the District Council. Such violations included employing non-union labor on its jobsites, paying carpenters in cash and through off-the-books payrolls at below-union wage rates, and filing false remittance reports that concealed the actual number of employees and hours worked by employees. In doing so, Murray underreported money owed to the Benefit Funds.

The Government alleges that Olivieri committed at least four overt acts in furtherance of the conspiracy charged in Count Three, including accepting a $730,000 loan from Murray to purchase investment properties in Yonkers, New York, and secretly helping Murray obtain control of another drywall contracting company. Count Eight of the Indictment charges Olivieri and others with scheming to deprive the District Council and its Benefit Funds of honest services in connection with On Par.

In Count Seventeen of the Indictment, the Government charges Olivieri with making unlawful payments to labor representatives, including codefendants Forde and Greaney. In Count Twenty–One, the Government charges him with unlawfully accepting a $730,000 loan from Murray with the intent to be influenced in his role as trustee of the Benefit Funds. Finally, in Count Twenty–Two, the Government charges Olivieri with perjury. Specifically, in a deposition conducted in relation to *United States v. District Council of the United Brotherhood of Carpenters & Joiners*, 90 Civ. 5722, a case pending in this district before the Honorable Charles Haight (the "Civil RICO Case"), the Government alleges that Olivieri gave false testimony that included denying a business relationship with Murray.

### B. CIVIL RICO CASE

The Government brought the Civil RICO Case in 1990 to combat corruption in the District Council, including possible influence by organized crime families. The district court entered a consent decree in 1994 that applied to every member and officer of the District Council, as well as to the Benefit Funds (the "Consent Decree"). In 2007, the Second Circuit, reversing a decision by the district court, held the District Council in contempt of the Consent Decree, and remanded to the district court to determine the remedy. *See United States v. New York City District Council*, 229 Fed.Appx. 14, 18–19 (2d Cir.2007). On remand, the Government proposed a remedy that was objected to by the District Council and many contractors' associations, including the WCCI. Olivieri filed an affidavit with the court in support of the associations' position on the Government's proposed remedy in May 2007. In

June 2007, the Government sought to depose Olivieri with respect to that affidavit. The WCCI opposed the Government's request, and the dispute was submitted to the court for resolution.

By Order dated August 13, 2007 (the "August 13 Order"), the court allowed the Government to depose Olivieri and other interveners on the economic effects of the Government's proposed remedy, as well as their awareness of the Consent Decree and its job referral rules. At that time, the court explicitly precluded the Government from making a general investigation into the associations' efforts to fight corruption. After the court issued the August 13 Order, the Government sought to expand the permissible scope of Olivieri's deposition, referencing the public record of Olivieri's relationship with organized crime figures, such as Louis Moscatiello ("Moscatiello"), a member of the Genovese organized crime family, who had pled guilty to charges related to union fraud. By Order dated October 25, 2007 (the "October 25 Order"), the court denied the Government's application, but stated that the Government would be

> entitled ... to inquire about Olivieri's knowledge, if any, of and contacts, if any, with Louis Moscatiello or other organized crime figures, with reference to the specific "corruption of the job site" targeted by the government and involving carpenters belonging to one of the District Council's constituent local unions. Such an inquiry may lead to the discovery of evidence that would be admissible at an evidentiary hearing or plenary bench trial on the underlying issues in the case. Except to that limited extent, the government's application to conduct discovery into whether Mr. Olivieri "and other officers" of the [WCCI] "have connections to organized crime or otherwise engaged in corrupt activities" is denied.

October 25 Order at 12. In November 2007, Olivieri petitioned the court to clarify that the October 25 Order limited the Government to questions pertaining to only Mosciatello and a specific jobsite. The court denied Olivieri's request, and by Order dated November 28, 2007, endorsed the Government's view that it was permitted to ask about Olivieri's contacts with and knowledge of organized crime figures relating to corruption at union jobsites.

The Government deposed Olivieri on December 18, 2007. The alleged false statements given by Olivieri at the deposition concern both Moscatiello and Murray. To questions about Moscatiello, Olivieri answered as quoted here: "I never met with him"; "No, I never made arrangements to see him ... I don't recall ever making a meeting with him"; when questioned about what he would say when he ran into Moscatiello, "How's the family?," "What's new?"; when asked whether he ever did business with him, "Not to my knowledge or recollection"; and in response to whether Olivieri had conversations with Moscatiello regarding the construction industry, "Not to my recollection." (Indictment ¶ 81, at i–iv.)

With respect to Murray, the Government alleges that Olivieri falsely stated: "I don't have a relationship with him"; in response to whether Olivieri spoke with Murray after he joined the WCCI, "He came to a couple of meetings"; regarding whether Olivieri discussed business with him, "How's business?," "How you doing?," "I'm busy," "I'm not busy," "Just general topics"; when asked how many times he spoke with Murray, "I have no idea," "I can't approximate," "I don't even know. I have no idea"; in response to whether Olivieri talked to Murray outside of an event or party, "I'm not 100% sure. No I can't—I don't recall"; regarding whether

he did business with Murray, "I never did business with Murray himself"; when asked whether Murray owned other companies, "Not to my knowledge"; regarding whether Olivieri's company worked at the same jobsite as On Par, "Not to my knowledge"; as to the identity of the person who Olivieri asked about a jobsite in the Bronx, "I don't recall his name right now"; when questioned how Olivieri knew that person, "Someone just told me they were putting up a job in that area"; in response to whether he could recall that person's name, "No I'm sorry I don't"; regarding whether Murray or a company associated with him did work at that jobsite, "I am unaware of it"; when asked whether a certain contractor worked on jobsites where On Par formerly worked, "Not to my knowledge"; when questioned whether that contractor hired workers that worked for On Par, "I don't get involved with any hiring of carpenters or anything like that"; as to whether Olivieri would have knowledge from another source as to the hiring of carpenters, "No. I don't have any idea"; in response to whether Olivieri arranged the transfer of business or workers from On Par to another contractor, "No I never did"; and finally, when asked whether anyone at WCCI arranged for the transfer, "Not to my knowledge." (*Id.* ¶ 81, at v-x.)

## II. *LEGAL STANDARD*

On a pretrial motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure, the Court takes the allegations in the indictment as true. *See United States v. Goldberg,* 756 F.2d 949, 950 (2d Cir.1985). Under the applicable standard, the Court need not rule on the legal sufficiency of the evidence at this early stage in the proceedings, but rather, need only focus on the legal sufficiency of the indictment itself without looking any further. *See United States v. Alfonso,* 143 F.3d 772, 776–77 (2d Cir.1998). Rule 7(c) of the Federal Rules of Criminal Procedure provides that the indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed.R.Crim.P. 7(c). As the United States Supreme Court has stated: "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). Thus, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Tramunti,* 513 F.2d 1087, 1113 (2d Cir.1975).

## III. *DISCUSSION*

According to Olivieri, the statements forming the basis of Count Twenty–Two were deemed immaterial as a matter of law to the Civil RICO Case pursuant to the October 25 Order, warranting the dismissal of Count Twenty–Two from the Indictment. The Court is not persuaded.

Section 1623(a) provides that "[w]hoever under oath ... in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration" shall be subject to criminal penalty. 18 U.S.C. § 1623(a). Section 1623(a) "is contravened only when the perjury is committed in response to a question which bears upon the matters within the investigation's purview." *United States v. Berardi,* 629 F.2d 723, 727 (2d Cir.1980). In other words, the statement must be "material to the proceeding in which it is given." *United*

*States v. Zagari,* 111 F.3d 307, 329 (2d Cir.1997) (emphasis omitted). A false statement is material if it has "a natural tendency to influence, or [is] capable of influencing, the decision of the decision-making body to which it is addressed." *United States v. Gaudin,* 515 U.S. 506, 509, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995) (quotation marks omitted). When made during a civil deposition, statements are material if "a truthful answer might reasonably be calculated to lead to the discovery of evidence admissible at the trial of the underlying suit." *United States v. Kross,* 14 F.3d 751, 754 (2d Cir.1994). In proving materiality, "[a]ll that is necessary is that the government show that the statement, if believed, could have influenced the decision" of the decisionmaking body, not that the decisionmaking body was actually influenced. *United States v. Stern,* No. 03 Cr. 81, 2003 WL 22743897, at *2 (S.D.N.Y. Nov. 20, 2003). Finally, materiality, except in the most extraordinary cases, is a mixed issue of law and fact to be decided by the jury. *See Gaudin,* 515 U.S. at 522–23, 115 S.Ct. 2310.

Although the Second Circuit has not considered the question, the Eighth Circuit has held that pretrial dismissal of a perjury count on materiality grounds would be appropriate only if no reasonable juror could find the statement material. *See United States v. Ferro,* 252 F.3d 964, 968 (8th Cir.2001) ("Now, so long as the indictment contains a facially sufficient allegation of materiality, federal criminal procedure does not provide for a pre-trial determination of sufficiency of the evidence." (quotation marks omitted)).

Olivieri contends that no reasonable juror could find these statements material because to do so would be to arrive at a conclusion contrary to the October 25 Order. The Court disagrees. Even assuming that the Government's deposition exceeded the boundaries drawn by the October 25 Order (a question not addressed here), it is the jury, not the Court, that must decide whether Olivieri's answers, if true, could have nonetheless led the Government to discover evidence relevant to matters pending in the Civil RICO Case. *See Kross,* 14 F.3d at 754. The Court agrees with the Government that the "no reasonable juror" threshold is not met here: it is plausible to imagine a reasonable juror finding, for example, that a truthful admission by Olivieri that he had a relationship with Murray, had discussed business with him and had received a $730,000 loan from Murray—who was defrauding the Benefit Funds at the time—was material to the Civil RICO Case. It is equally easy to imagine a jury finding that Olivieri's false statements, such as those denying his relationship with Moscatiello, could have potentially influenced the district court's decisionmaking in the Civil RICO Case. *See Gaudin,* 515 U.S. at 509, 115 S.Ct. 2310.

That Olivieri allegedly perjured himself in a court-ordered deposition does not transform a question for the jury into a pretrial matter of law to be resolved by this Court. Olivieri urges the Court to consider the materiality issue fully litigated. In Olivieri's estimation, materiality requires an interpretation of the scope of the October 25 Order—a matter unsuitable for submission to the jury. But despite Olivieri's protests to the contrary, the October 25 Order did not constitute a ruling on "materiality," but a resolution of a run-of-the-mill discovery dispute. To characterize it any other way would be to put words in Judge Haight's mouth.

Olivieri argues that the standard for materiality, at its broadest, is the same standard that the court used to determine what questions would be permissible at

Olivieri's civil deposition. These inquiries, though perhaps both cast in terms of discoverable evidence, are plainly not the same. Significantly, the court determined the permissible reaches of discovery only in reference to the narrow question of a contempt remedy. As the Government identifies them, issues ongoing in the Civil RICO Case at that time also included whether (1) the Consent Decree should be terminated, (2) the independent investigator should be replaced, and (3) Forde should be held in contempt of the Consent Decree. Olivieri presents no authority or persuasive argument in support of restricting the materiality inquiry to the limited subject matter of the October 25 Order.

▆ Olivieri also argues that his statements represented the literal truth, requiring dismissal. The Court disagrees. Although a defendant may not be convicted for perjury on the basis of statements that are literally true, *see Bronston v. United States*, 409 U.S. 352, 360–61, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973), "[w]hether an answer is literally true raises a factual question to be resolved by the jury." *United States v. Lighte*, 782 F.2d 367, 373 (2d Cir.1986). To hold otherwise would require this Court, without the benefit of the parties' evidence, to evaluate the merit of the charges against Olivieri by assessing Olivieri's credibility, a core function of the fact-finder at trial.

▆ Finally, Olivieri asserts that the questions posed by the Government in his civil deposition were fundamentally ambiguous, demanding dismissal of the perjury charge against him. If a "line of questioning is so vague as to be 'fundamentally ambiguous,' the answers associated with the questions posed may be insufficient as a matter of law to support the perjury conviction." *Id.* at 375. A question is fundamentally ambiguous when it "is not a phrase with meaning about which men of ordinary intellect could agree, nor one which could be used with mutual understanding by a questioner and answerer unless it were defined at the time it were sought and offered as testimony." *Id.* In this Court's reading, none of the Government's questions meet this standard of fundamental ambiguity.

Olivieri specifically points to the Government's question, "Did you ever do business with Murray?," and suggests that the Government could have been more clear by asking follow-up questions as to whether Olivieri did business with Murray's company or with members of Murray's family. *See Bronston*, 409 U.S. at 360, 362, 93 S.Ct. 595 (holding that the Government has the burden "to pin the witness down to the specific object of the inquiry"). Putting aside the Government's allegations that Olivieri actually did do business with Murray himself, there is nothing about the Government's question that would make it susceptible to multiple interpretations. Olivieri, if truly confused, could also have asked for clarification. Instead he replied with a strong denial—that he "never did business with Murray himself." (Indictment ¶ 81, at vii.) Olivieri's unconditional denial provides further evidence that the question was not ambiguous.

▆ The Court also denies Olivieri's request for an in camera inspection of the grand jury minutes. It is well-settled that a defendant seeking disclosure of grand jury minutes has the burden of showing a "particularized need" that outweighs the default "need for secrecy" in grand jury deliberations. *United States v. Moten*, 582 F.2d 654, 662 (2d Cir.1978). Olivieri asserts that he has made "concrete" and "specific" allegations of Government misconduct, allowing the Court to appropriately review the minutes. *United States v. Leung*, 40 F.3d 577, 582 (2d Cir.1994); *United States v. Torres*, 901 F.2d 205, 232–

33 (2d Cir.1990). Olivieri contends that the October 25 Order was not provided to the grand jury, giving the Court a sufficient basis to disregard the grand jury's secrecy. Mere speculation that the grand jury may have heard insufficient evidence, or that the Government may have improperly instructed the grand jury on materiality, falls far short of the showing to overcome the presumption of secrecy. *See, e.g., United States v. Finnerty,* No. 05 Cr. 393, 2006 WL 2802042, at *9 (S.D.N.Y. Oct. 2, 2006); *United States v. Jailall,* No. 00 Cr. 069, 2000 WL 1368055, at *2 (S.D.N.Y. Sept. 20, 2000).

### IV. *ORDER*

For the reasons set forth above, it is hereby

**ORDERED** that the motion (Docket No. 127) of defendant Joseph Olivieri for dismissal and other relief is DENIED.

**SO ORDERED.**