UNITED STATES of America,
Plaintiff–Appellant,

v.

N.Y.C. DISTRICT COUNCIL OF N.Y.C. & Vicinity of the United Brotherhood of Carpenters and Joiners Of America, Defendant–Appellee,

Frederick W. Devine, John R. Abbatemarco, George J. Albert, Robert J. Cavanaugh, Paschal McGuinness, Irving Zeidman, Francis J.P. McHale, Anthony Salerno, Vincent DiNapoli, Louis DiNapoli, Peter DeFeo, Alexander Morelli, and Liborio Bellomo, Defendants.

Nos. 06–1988–cv(L), 06–3348–cv(CON).

United States Court of Appeals,
Second Circuit.

April 18, 2007.

Edward Scarvalone, Assistant United States Attorney for the Southern District of New York, New York, N.Y. (Michael J. Garcia, United States Attorney for the Southern District of New York, Benjamin H. Torrance, Sean H. Lane, and Sara L. Shudofsky, Assistant United States Attorneys for the Southern District of New York, on the brief), for Plaintiff–Appellant.

Gary Silverman (Gary P. Rothman on the brief), O'Dwyer & Bernstien, LLP, New York, NY, for Defendant–Appellee.

Present: Hon. GUIDO CALABRESI, Hon. B.D. PARKER, and Hon. RICHARD C. WESLEY, Circuit Judges.

### AMENDED SUMMARY ORDER

The government appeals the January 12, 2006 Order of the district court denying its motion for contempt of a consent decree, and the May 16, 2006 Order of the district court denying its motion for reconsideration. Familiarity by the parties is assumed as to the facts, the procedural context, and the specification of appellate issues. After reviewing the district court's January Order, we now reverse.[1]

The consent decree ("Consent Decree") at issue in this case arose from the 1994 settlement of a civil RICO case the government brought against the N.Y.C. District Council of N.Y.C. & Vicinity of the United Brotherhood of Carpenters and

---

1. Because this Court reverses and remands the January Order, it need not, and does not, consider the motion for reconsideration.

Joiners of America ("Union" or "District Council"). *United States v. Dist. Council of New York City*, 409 F.Supp.2d 439, 441 (S.D.N.Y.2006). In 2001, the Union entered into collective bargaining agreements ("CBAs") that, at the least, significantly modified the job referral rules ("Job Referral Rules") attached to and incorporated into the Consent Decree. *Id.* at 444–45. Alleging that the Union had not abided by the terms of the Consent Decree, the government made a motion for contempt before the district court. *Id.* at 440.

Rule 5(A) of the Union's Job Referral Rules required members on the out-of-work list ("OWL") to be "referred to jobs in the order in which they have registered their availability for referral." Rule 5(B) provided, in full, that "[r]equests by an employer for specific members employed by the employer within the previous six months shall be fulfilled, as required by applicable collective bargaining agreements."

Paragraph 5 of the Consent Decree required the Union's constituent locals to "adopt the [J]ob [R]eferral [R]ules and procedures[,] . . . make all job referrals in accordance with the [J]ob [R]eferral [R]ules and . . . comply with the [J]ob [R]eferral [R]ules in all respects."

Paragraph 11 provided that the Union's By–Laws were "amended to conform with all of the terms of this Consent Decree." It further required that the Job Referral Rules be made part of the By–Laws.[2]

Paragraph 11 also required the Union to "waive[ ] compliance with "any current or future rights, privileges or rules applicable to the [Union] or its membership" if they conflicted with the Consent Decree," and, along with "its membership[,] . . . act in accordance with this Consent Decree."

Finally, Paragraph 12 required the Union to give the government prior written notice of any proposed changes to the By–Laws, and inform the government "of any changes in any rules or procedures adopted or implemented pursuant to paragraphs 4(g), 4(h), 4(i)(3), 5, 9(c), and 10, of this Consent Decree" from the date the Consent Decree was implemented to seven years "after the termination of the Investigations and Review Officer's term of office," which ended in June 1999. If the government objected to a change, the Union could "apply to the Court for a determination as to whether the proposed change is consistent with the terms and objectives of this Consent Decree"; otherwise, the change could not occur.

When the Consent Decree was entered, all of the Union's CBAs contained a "50/50 rule" that "authoriz[ed] the union to assign fifty percent of the carpenter workforce at a job site (with the company designating the other fifty percent)." *Dist. Council of New York City*, 409 F.Supp.2d at 444. As the district court correctly noted, the interplay of the 50/50 Rule and Job Referral Rule 5(A) "create[d] a major source of job opportunities for members who had been seeking work for the longest period of time." *Id.* This effect was lessened some-

---

**2.** In fact, paragraph 11 provides that the "job referral procedures described in paragraph 4(h) . . . shall be made a part of the District Council By–Laws." Paragraph 4(h) required an Investigations and Review Officer to "supervise the adoption, implementation and operation of the [J]ob [R]eferral [R]ules adopted to pursuant to paragraph 5." Paragraph 5, as already explained, required the constituent locals to adopt the Job Referral Rules. The effect, then, was to incorporate the Job Referral Rules attached to the Consent Decree into the Union's By–Laws.

what by Rule 5(B), which permitted employers to hire workers who had worked for them in the previous six months, because workers hired under 5(B) would be designated as "Union" workers for 50/50 Rule purposes. *Id.*

In the 2001 CBAs, the Union "granted a concession to the associations of contractors that eliminated the requirement that a contractor could not request the services of a particular contractor on a job unless that carpenter had worked for the requesting contractor within the past six months." *Id.* The 2001 CBAs gave these contractors "an unfettered right to select all the carpenters on a job" by permitting them to "pick" the 50 percent contingent of carpenters that, under previous CBAs, had been assigned to them in chronological order from the OWL. *Id.* at 444–45. The parties refer to this as the "Request System."[3]

In its contempt motion, the government alleged that the Union violated Paragraph 12 of the Consent Decree by failing to give the government "prior notice of its intent to enter into the 2001 CBAs which included the Request System, thereby eliminating the six-month prior employment limitation contained in Rule 5(B) of the Job Referral Rules." *Id.* at 449–50.

The district court denied the government's motion. It first found that the Request System did change the operation of Rule 5(B) of the Job Referral Rules and that Paragraph 12's prior notice requirement did apply to changes made to the Job Referral Rules. *Id.* at 451. It then noted

that the Job Referral Rules had been changed through the collective bargaining process. *Id.* at 451–52. The court next found that the parties "did not intend the Consent Decree to bring future collective bargaining agreements within its purview," that the reason the Union granted the Request System concession in the CBAs was "understandable," and that there was no suggestion that the CBA formation processes were "tainted" by extortion or influenced by organized crime. *Id.* at 454–55. Thus, the district court denied the motion for contempt. *Id.* at 456.[4] The government then filed a motion for reconsideration, which the district court denied. *United States v. Dist. Council of New York City,* No. 90–5722(cv), 2006 WL 1586560, *1 (S.D.N.Y. June 8, 2006).

Legal determinations, including the interpretation of the Consent Decree, are reviewed *de novo. See E.E.O.C. v. Local 638,* 81 F.3d 1162, 1171 (2d Cir.1996). The district court's factual determinations are reviewed for clear error. *United States v. Local 1804–1, Int'l Longshoremen's Ass'n,* 44 F.3d 1091, 1095 (2d Cir.1995). Finally, the burden of proof rests on the party moving for contempt—here, the government. *See, e.g., id.* at 1097 n. 1.

A contempt order is a "potent weapon," *Int'l Longshoremen's Ass'n v. Phila. Marine Trade Ass'n,* 389 U.S. 64, 76, 88 S.Ct. 201, 19 L.Ed.2d 236 (1967), that is inappropriate if "there is a fair ground of doubt as to the wrongfulness of the defendant's conduct." *Cal. Artificial Stone Paving Co. v. Molitor,* 113 U.S. 609, 618, 5 S.Ct. 618, 28 L.Ed. 1106 (1885). Nevertheless, courts

---

**3.** At the same time, the Union took away from contractors who were not a part of an association the rights once assigned to them under 5(B) to choose to hire people who had worked for them in the last six months.

**4.** The court found in the alternative that the Consent Decree was ambiguous, so the government did not fulfill its burden to show the Union disobeyed a "clear and unambiguous order." *Id.*

18

have "inherent power to enforce consent judgments, beyond the remedial 'contractual' terms agreed upon by the parties [because] a consent judgment contemplates judicial interests apart from those of the litigants." *E.E.O.C. v. Local 580, Int'l Ass'n of Bridge, Structural and Ornamental Ironworkers, Joint Apprentice–Journeyman Educ. Fund,* 925 F.2d 588, 593 (2d Cir.1991).[5]

A court's power to impose contempt orders is nonetheless limited. A contempt order is warranted only if the "moving party establishes by clear and convincing evidence that the alleged contemnor violated the district court's edict." *King v. Allied Vision, Ltd.,* 65 F.3d 1051, 1058 (2d Cir.1995) (citing *Hart Schaffner & Marx v. Alexander's Dep't Stores, Inc.,* 341 F.2d 101, 102 (2d Cir.1965)). The movant must establish that "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *King,* 65 F.3d at 1058. (citing *New York State Nat'l Org. for Women v. Terry,* 886 F.2d 1339, 1351 (2d Cir.1989)).

■ The Consent Decree is clear and unambiguous. *King,* 65 F.3d at 1058. The Consent Decree addresses CBAs in two places: Paragraph 4(f)(1)(b) and Job Referral Rule 5(B). However, neither empowers the Union to circumvent the Consent Decree through a CBA.

The district court noted that Rule 4(f)(1)(b) "implemented" a "principled ex-

clusion of collective bargaining agreements from the reviewing and negotiating powers of prospective court officers" by authorizing the Investigations and Review Officer to "review the Union's contracts or proposed contracts 'except for collective bargaining agreements.'" *Dist. Council of New York City,* 409 F.Supp.2d at 454. It then concluded that because "the [Investigations and Review Officer] had no business reviewing or editing CBAs[,] ... the parties did not intend the Consent Decree to bring future collective bargaining agreements within its purview." *Id.*

We disagree. It is apparent that the parties were clearly capable of explicitly excluding CBAs from certain Consent Decree requirements. However, the portions of the Consent Decree that address the Union's prior notice and review obligations do not exclude CBAs from government oversight. Furthermore, Rule 4(f), by its terms, applies only to the Investigations and Review Officer—not the government. Thus, we are confident in concluding that the district court's reliance on Rule 4(f) to exclude CBAs from oversight was misplaced: CBAs are not excluded from the notice and review requirements elsewhere; the 4(f)(1)(b) limitations on Investigations and Review Officer oversight do not apply to the government; and Paragraphs 11 and 12, discussed below, do not refer to 4(f).

Job Referral Rule 5(B) provides that "[r]equests by an employer for specific members employed by the employer within the previous six months shall be fulfilled, as required by applicable collective

---

5. Until the parties have "fulfilled their express obligations" to comply with a consent decree, "the court has continuing authority and discretion—pursuant to its independent, juridical interests—to ensure compliance." *Id.* This "continuing authority" does not, howev-

er, extend to grant a court jurisdiction over a consent decree that, by its express terms, has expired. *E.E.O.C. v. Local 40, Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers,* 76 F.3d 76, 80 (2d Cir.1996).

bargaining agreements." But Rule 5(B) must be read in conjunction with Rule 5(A), which provides that "[m]embers on the out-of-work list shall be referred to jobs in the order in which they have registered their availability for referral...." Rule 5(B) is an exception to 5(A)'s general requirement of first-listed, first-hired, and permits deviation from 5(A) only where that deviation is contained in a CBA and in only one situation: when the member has been employed by the contractor in the previous six months. Rule 5(B) does not permit the Union to make unlimited changes to the Job Referral Rules in a CBA. This is particularly true when Job Referral Rule 5(B) is read in conjunction with Consent Decree Paragraph 11, which, again, provides that "[t]o the extent that this Consent Decree conflicts with any current or future rights, privileges or rules applicable to the District Council or its membership, the District Council ... hereby waives compliance with any such right, privilege or rule and agrees that it and its membership will act in accordance with this Consent Decree."

■ Paragraph 11 further requires the Union to make the Job Referral Rules part of the District Council By–Laws. Thus, the Paragraph 12 requirement that "the District Council shall give prior written notice to the Government ... of any proposed changes to the By–Laws" was violated when the Union entered into CBAs that made it impossible to comply with the Job Referral Rules incorporated into both the Consent Decree and the Union By–Laws.

■ Proof of noncompliance is clear and convincing. *King*, 65 F.3d at 1058. We reject the Union's claim that Rule 5(B) permitted the job referral practices in the 2001 CBAs, and the Union has offered no other argument that the terms of the CBAs were otherwise consistent with the Consent Decree's requirements. Finally, the government upheld its burden to show that the Union did not diligently attempt to comply with the Decree. *Id.* Compliance required notice of changes that occurred as a result of the 2001 CBAs, and the government proved that the Union made no attempt to notify it, either before or after it entered into these CBAs, that these changes would occur.

As a result, we find that the district court erred in concluding that the Union was not in contempt. We remand for the entry of the Order of contempt, and leave to the district court's discretion the proper remedy. We close with a note of appreciation for that court's long and distinguished stewardship over this matter. Our disagreement here is one of law and not discretion.

Accordingly, for the reasons set forth above, the judgment of the district court is hereby REVERSED AND REMANDED.