**UNITED STATES of America,**
**Plaintiff,**

v.

**DISTRICT COUNCIL OF NEW YORK CITY AND VICINITY OF the UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA,**
**et al., Defendants.**

No. 90 Civ. 5722 (CSH).

United States District Court,
S.D. New York.

May 26, 2009.

AUSA Benjamin Torrance, AUSA Kristin Vassallo, for Michael Garcia, U.S. Attorney, New York, NY, for Government.

Gary Rothman, Esq., O'Dwyer & Bernstien, LLP, New York, NY, for Defendants.

Loren L. Forrest, Jr., Esq., Frederick Braid, Esq., Holland & Knight, LLP, New York, NY, for the BCA.

Scott A. Gold, Esq., Holly Weiss, Esq., Schulte Roth & Zabel, LLP, New York, NY, for the Wall–Ceiling Association.

Joseph Kaming, Esq., Kaming & Kaming, New York, NY, for the Cement League.

Mark A. Rosen, Esq., McElroy Deutsch Mulvaney & Carpenter, LLP, Morristown, NJ, for GCA.

James Issac Wasserman, Esq., Vladeck, Waldman, Elias & Engelhard, P.C., New York, NY, for Eugene Clarke.

## MEMORANDUM

HAIGHT, Senior District Judge:

In an opinion reported at 592 F.Supp.2d 708 (S.D.N.Y.2009) ("the Opinion"), familiarity with which is assumed, the Court recited its holdings in principle with respect to the proper remedy for the District Council's contempt of the Consent Decree. That opinion directed the Government, which had successfully moved to hold the District Council and its president, Peter Thomassen, in contempt, to settle on notice a Final Order and Judgment of Contempt and Remedy ("the Order") "consistent with this Opinion." 592 F.Supp.2d at 727.

A considerable delay ensued, apparently because counsel for the parties were attempting to agree upon the wording of an order consistent with the Opinion. Those efforts failed. Eventually the Government served its proposal for the text of the Order upon the District Council and the four Intervenors, contractors' associations who were granted leave to intervene in the remedy proceedings. The District Council and the Intervenors served proposed versions of their own. These competing orders were followed by extensive exchanges of letter briefs between counsel.

There are substantial disputes between the parties with respect to what the Order should say to be consistent with the Opinion. The competing texts, and counsel's briefs supporting theirs and criticizing the

others, echo contentions advanced during the remedy proceedings resulting in the Opinion, and, in some instances, seem to reflect a state of denial that a particular issue was decided adversely to a party.

Having considered the three proposals and the further submissions of counsel, the Court files its Order concurrently with this Memorandum. The Memorandum explains why certain issues were resolved in the manner they were. It is not necessary to give the Court's reasons for the preference of each particular phrase in the Order over a competing or different phrase. What follows deals with the issues of arguable substance.

### 1. The Inroductory "WHEREAS" Paragraphs

The Order omits several "WHEREAS" paragraphs included by the Intervenors in their text, which stress that the contractors' associations and their members were not complicit with the District Council's conduct ultimately held to be contumacious by the Court of Appeals. These rather smug assertions are accurate enough; they find support in observations by the Court in earlier opinions. But not only does this self-congratulation play no useful role in laying the factual background for the Order's decretal paragraphs, it leads to a potential undermining of the Order's remedial purpose.

The last WHEREAS paragraph in the Government's text recites that the Order's underlying purpose is "to bring about compliance with the Consent Decree and to prevent future violations of the Consent Decree." That purpose necessarily embraces compliance with and prevention of violations of the Job Referral Rules, which are incorporated into the Consent Decree. The Intervenors would edit this paragraph to read: "to bring about *the District Council's* compliance with the Consent Decree

and to prevent future violations of the Consent Decree *by the District Council*" (emphasis added). This revision is unacceptable because it disregards the reality, amply demonstrated by the history of this case, that just as it takes two to tango, it frequently takes two to violate the Consent Decree and the Job Referral Rules: a corrupt Union shop steward or officer, and a corrupt contractor. That reality is demonstrated by the record generated during Eugene Clarke's partially successful action against Michael Forde, a former local union business agent and now the District Council Executive Secretary–Treasurer, with respect to the assignment of shop stewards. It is demonstrated by the several reports of the two Court-appointed Independent Investigators, Walter Mack and Unitel (William Callahan), describing the means by which corrupt contractors avoid making payments to the Union benefit funds mandated by the collective bargaining agreements. It is demonstrated by the continuing applications by Unitel to the Court for subpoenas in aid of investigating certain contractors suspected of like behavior. The efforts of the Court's Independent Investigators, when shared with the Government, have resulted in the indictment and conviction of several contractor company officers. Their investigations, conducted in cooperation with the Union benefits funds and their forensic auditors, have assisted the funds in recovering unpaid sums from contractors in arbitration under the collective bargaining agreements.

In reciting this history, I do not mean to overstate the number of dishonorable contractors in the Intervenors' ranks. On the contrary: I accept the assertions of Intervenors' counsel that the vast majority of their members are honorable and law-abiding. However, the vice of the Intervenors' limited text lies in the potential and unac-

ceptable argument that a corrupt contractor might be encouraged to make in the future: that only the conduct of the District Council is governed by the Order and its underlying documents. That is not the case, as the Order makes clear.

## 2. The Government's Right to Discovery

These factors lead seamlessly to a consideration of the Government's rights to discovery provided by the Order.

The Government's discovery rights are stated in decretal paragraph 11 of the Order. They implement the Opinion's grant in principle of the "enhanced and continued supervision" the Government requested during the remedy proceedings. 592 F.Supp.2d at 727. Paragraph 11 of the Order empowers the Government to "issue discovery demands and subpoenas to the District Council, its constituent local members, the Intervenors, and their contractor members, to obtain documents and testimony, relating to their compliance with this Order." The Intervenors' text omitted any reference to them in this paragraph. Their briefs, again stressing their innocence of the particular contumacious conduct for which this Order affords a remedy, argue that they and their contractor members should not be subject to discovery by the Government in respect of compliance with the Order.[1]

█ I reject that argument because, as demonstrated in Part I, contractors as well as the District Council are responsible for compliance with the Consent Decree and the Job Referral Rules, further implemented by orders such as this one. Transgressions on the part of both District Council officers and contractors have oc-

curred in the past. The Government is entitled to ongoing discovery on both sides of the equation. Contractors are not strangers to comparable discovery procedures. The Court-appointed Independent Investigators, charged with insuring compliance with the Job Referral Rules, routinely caused the issuance to contractors of subpoenas requiring the production of company documents and the depositions of company officers. The successor Independent Investigator is doing so at present (he must apply to the Court *ex parte* for a subpoena).

The discovery procedures described in Paragraph 11 of the Order do not allow an open-ended fishing expedition by the Government. The discovery is governed by Rules 26–37, Fed.R.Civ.P. An entity or individual served with a Government subpoena has available all the objection and protective order procedures provided by the Rules. The Government, as proponent of the discovery, has the burden of showing that it is "regarding any non-privileged matter that is relevant to" compliance with the Order. Rule 26(b)(1). If a dispute arises with respect to the propriety or scope of a discovery demand, this Court will resolve it.

In the circumstances of the case, and in the exercise of my discretion, I conclude that the Government's right of discovery under the Order should not be limited to the District Council side of the interactions between unions and contractors.

## 3. Peter Thomassen as a Contemnor

The first decretal paragraph of the Government's proposed order provided that "the District Council and Peter Thomas-

---

1. The letter brief for one Intervenor revives a complaint, rejected by the Court during the remedy proceeding, that the Intervenors were treated unfairly when the limited discovery granted the Government at that time was not matched by a grant of reciprocal discovery to the Intervenors.

sen" are adjudged and held in contempt" for violating the Consent Decree. The District Council's version omits any reference to Thomassen.

At the pertinent times Thomassen was, and still is, the President of the District Council. Under the District Council's rather odd nomenclature, the President is not the chief executive officer; that power resides in the office of the Executive Secretary/Treasurer, currently held by Michael Forde. However, at an earlier hearing in the case, Thomassen's testimony made it plain request that he played a central role in the negotiations of collective bargaining agreements containing the Request System, which lay at the heart of the District Council's contumacious conduct. In its motion for contempt, the Government, not illogically, alleged that both the District Council and Thomassen were contemnors. The Court of Appeals' opinion focused solely upon the conduct of the District Council, but it is correct in the circumstances to adjudge both the District Council and Thomassen as in contempt of the Consent Decree. This works no personal hardship upon Thomassen, who is not subjected to a fine or any other personal sanction. The remedies provided by the Order are limited to the modified job referral procedures the District Council and contractors must follow.

### 4. The Applicability of the Order

Decretal paragraph 3.b. of the Order sets forth in detail the manner in which carpenters will be assigned to a particular job site. Certain aspects of that paragraph are discussed in Part 5, *infra*. Preliminarily, it is necessary to identify the construction contracts to which the Order's assignment procedures will apply.

The Government's proposed text said that the assignment procedures specified in paragraph 3.b. "will not apply to any construction contact that was finally executed on or before the date of this Order was entered on the docket of this Court." That provision, in the nature of a grandfathering clause, reflected the Government's acceptance of a point urged by the Intervenors: It would be unfair to impose upon contractors a job assignment protocol reducing their ability to select 100% of the carpenters at a job site (possible under the now abolished Request System) when they had signed a construction contract giving them that right, upon which they based cost and performance calculations built into the contract.

The District Council and the Intervenors contend that the Government's concession does not go far enough. They say that the Order's procedures should not apply to a project on which a contractor has bid but the contract has not yet been awarded. The rationale for grandfathering such bids is the same: the contractor calculated its bid on the assumption that the Request System would continue in force.

■ I agree with the District Council and the Intervenors. Presumably the number of projects upon which contractors have bid but contracts have not been awarded is relatively small, but the Order will protect them. The District Council's suggested wording was preferable to that of the Intervenors. It is adapted as decretal paragraph 9 of the Order, which also imposes disclosure requirements for projects under bid but not yet under contract.

### 5. Procedures for the Selection, Hiring or Referral of Carpenters to a Job Site

Decretal paragraph 3 of the Order contains the substantive modifications of the manner in which carpenters are assigned to a particular job site. Paragraph 3.a. abolishes the Request System, to be re-

placed by the procedures set forth in Paragraph 3.b.

The three proposed texts of this paragraph differed widely. The Government, the District Council, and the Intervenors all tended to focus upon what they wanted in the Order and ignore or quarrel with what others wanted. In the Order, I have accepted some suggestions, rejected others, and exercised my best efforts to fashion an Order creating a proper remedy for the District Council's contempt, while providing for the legitimate concerns of all interests involved in this highly important case.

I do not propose to refer in this Memorandum to all the issues arising out of paragraph 3. But it is necessary to discuss paragraph 3.b.(vi).

Paragraph 3.b.(vi). is intended to alleviate a concern most persuasively expressed by counsel for one of the Intervenors, the New York City General Contractors Association ("GCA"). *See* letter brief of Mark A. Rosen, dated April 17, 2009, at 1–2. Counsel notes that contractor members of the GCA "perform heavy construction work." Specifically, "they construct bridges, highways, transit work, tunnels and the like." And counsel adds:

> The skill set required of carpenters performing work on such projects is very different from that required for working on high rise construction. It is crucial to the members of the GCA that they be able to obtain carpenters with the required skills and experience to perform the work on their particular jobs.

Counsel identifies another problem for GCA contractors: The public agencies for which these contractors perform public almost always require "security clearances and background checks for workers employed on a job site," particularly after 9/11. Counsel concludes: "Contractors must have the ability to employ carpenters

that not only have the requisite skills but the security clearances to permit them to work on a project."

■ These concerns are legitimate. The Government does not demonstrate that they are not. Paragraph 3.b.(vi). establishes a procedure by which contractors may raise these concerns and needs with the District Council, and the District Council may respond to them in connection with assignments off the Out–of–Work List. These procedures do not allow contractors *carte blanche* rights of selection or a means of reviving the Request System through the back door, a risk squarely presented by the Intervenors' draft of paragraph 3. A contractor's utilization of paragraph 3.b.(vi). must be supported by a timely list of specific attributes for a carpenter which are "*reasonably required* by a particular job," and the District Council can assign a carpenter whose skills "*substantially satisfy* those requirements." (emphasis added). These are not meaningless words. They have teeth. The concepts of the "reasonable" man and "reasonable" conduct are as old as the common law. Use of these procedures will be contemporaneously documented, and copies furnished to the Government for its review and monitoring.

If the operation of paragraph 3.b.(i)-(vi) gives rise to problems in practice, any party may call the matter to the Court's attention, with specific and, if possible, documented illustrations of the problem encountered. However, the Court intends (and anticipates) that with the good will of all parties, acting in good faith, the Order will achieve its two main objectives: restoring vitality to the Out of Work List and relief for unemployed carpenters, while serving the legitimate interests of contractors in a competitive industry in forming a carpenter workforce qualified to meet the demands of a particular project.

### 6. Additional Comments

The Order includes certain paragraphs of disclaimer requested by one or another of the parties, by which I mean statements of what the Order does not do. The necessity for some of these paragraphs is not clear, but they were requested, do no discernible harm, and I have included them.

While I have considered all of the parties' requests and contentions, I do not see the need to comment further in this Memorandum.

## FINAL ORDER AND JUDGMENT OF CONTEMPT AND REMEDY

WHEREAS, on March 4, 1994, 1994 WL 75026 (S.D.N.Y.1994), this Court entered a Consent Decree resolving the above-captioned case brought by the United States of America ("the Government") against, among other defendants, the District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America ("the District Council") pursuant to the Racketeer and Corrupt Organizations Act ("RICO"); and

WHEREAS, on April 18, 2007, 229 Fed. Appx. 14 (2d Cir.2007), the United States Court of Appeals for the Second Circuit issued an amended summary order finding that the District Council violated the Consent Decree by failing to notify the Government before agreeing to collective bargaining agreements in 2001 that were in conflict with the Consent Decree's Job Referral Rules ("the Job Referral Rules"); and

WHEREAS, the Second Circuit directed this Court to enter an order of contempt against the District Council, and to determine the appropriate remedy for the District Council's contempt; and

WHEREAS, in determining the appropriate remedy for the District Council's contempt, the Court has considered written submissions made by the Government; the District Council; four contractors' associations granted leave by the Court to intervene in the contempt remedy proceedings, namely, the Building Contractors Association, the Association of Wall–Ceiling and Carpentry Industries of New York, the Cement League, Inc., and the General Contractors Association of New York (collectively, "the Intervenors"); and Eugene Clarke, a union member granted *amicus curiae* status; and the Court has also considered the oral arguments of counsel at a hearing held for that purpose; and

WHEREAS, on January 13, 2009, 592 F.Supp.2d 708 (S.D.N.Y.2009), the Court issued a memorandum opinion and order ("the Opinion") setting forth remedies for the District Council's contempt and directing the Government to settle on notice a Final Order and Judgment of Contempt an Order consistent with the Opinion; and

WHEREAS, counsel for the government, the District Council, and the Intervenors submitted differing drafts of the Order that should issue, which have been considered by the Court; and

WHEREAS, the Court has concluded that, under the All Writs Act, 28 U.S.C. § 1651(a), and in the circumstances of the case, the Court has the power to alter provisions in collective bargaining agreements between the District Council and the Intervenors; and

WHEREAS, the Court finds that the District Council's contempt, *inter alia,* undermined the benefits that the Consent Decree was intended to confer upon unemployed carpenters; and

WHEREAS, the Court finds that the remedies set forth in the Opinion are necessary to achieve compliance with the Consent Decree and to prevent further violations of the Consent Decree; and

WHEREAS, to bring about compliance with the Consent Decree and to prevent future violations of the Consent Decree, the Court concludes that it has the authority to enter this Final Order and Judgment of Contempt and Remedy (sometimes "the Order"), pursuant to its contempt powers, its inherent authority, and the All Writs Act;

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DE-CREED, as follows:

1. The District Council and Peter Thomassen, its president, are adjudged and held in contempt of this Court for violating the Consent Decree entered in this action on March 4, 1994.

2. Unless otherwise indicated, all terms in this Final Order and Judgment of Contempt and Remedy ("the Order") have the same meaning as the terms used in the Opinion. The noun "contractor," as used in this Order, is synonymous with "employer."

3. In order to remediate the contempt found herein, the following remedies shall be implemented:

a. The current Request System, under which contractors may make unlimited requests for particular union carpenters, by name, from the Out of Work List, is abolished. All provisions implementing or related to the implementation of the Request System in collective bargaining agreements between the District Council and contractors employing carpenters represented by the District Council are hereby declared null and void.

b. The selection, hiring or referral of carpenters at a particular jobsite will take place in accordance with the following provisions of this Order:

(i). The 50/50 Rule included in certain collective bargaining agreements between the District Council and certain contrac-tors, pursuant to which a contractor may select and hire 50% of the carpenters at a job site without regard to the Out of Work List and the Job Referral Rules, shall continue in effect.

(ii). The other 50% of carpenters at a job site will be referred by the District Council from the Out of Work List, in accordance with the Job Referral Rules as modified herein. The first carpenter referred by the District Council pursuant to this paragraph is to be referred without regard to any request by a contractor for a specific person.

(iii). The six-month provision contained in Job Referral Rule 5(B) is hereby restored. Requests by a contractor for a particular carpenter shall be fulfilled by the District Council, provided that before fulfilling the request, the District Council shall verify, by whatever means are necessary, that the contractor employed that carpenter within the previous six months. If the District Council cannot verify that prior employment, it is not permitted to make the requested referral.

(iv). The percentage of the total carpenter workforce on a job site selected by a contractor shall not exceed 67%. That percentage is made up of a contractor's selection of 50% of the carpenter workforce, as referred to in Paragraph 3.b.(i). of this Order, and an additional 17%, comprised of carpenters requested by a contractor whose request the District Council fulfilled in accordance with Paragraph 3.b.(iii). of this Order. However, if the number of carpenters required at a particular job site do not divide evenly into the 67% contractor—33% union formula, the contractor may select an additional carpenter whose prior employment satisfies paragraph 3.b.(iii). of this Order.

(v). The remaining 33% of the total carpenter workforce on a job site will be

carpenters assigned by the District Council from the Out of Work List who have not been requested by a contractor by name, in the order in which they have registered their availability for referral, provided that the carpenter has indicated that he or she has the qualifications for the job, as provided under Job Referral Rule 5(A) and as further provided in Paragraph 3.b.(vi). of this Order. Except as provided in Paragraph 3.b.(vi). of this Order, carpenters specifically requested by a contractor and assigned pursuant to Job Referral Rule 5(B) and Paragraph 3.b.(iii). shall not be counted against the 33% to be assigned by the District Council directly from the Out of Work List.

(vi). With respect to carpenters to be assigned by the District Council directly from the Out of Work List, as provided for in Paragraph 3.b.(v). of this Order, a contractor may give the District Council written advance notice of specific skills, certifications, clearances, or training reasonably required by a particular job. If given such a notice, the District Council must assign carpenters from the Out of Work List whose skills substantially satisfy those requirements. If the District Council or its constituent locals are unable to refer a carpenter whose skills or qualifications are reasonably required by the job, a carpenter specifically requested by name by the contractor shall be referred, provided that the carpenter has been employed by the contractor during the previous six months (as verified by the District Council). In that circumstance, that carpenter will be counted against the 33% to be assigned by the District Council. The District Council is directed to preserve all such written notifications it receives from contractors, and send copies to the Government within 7 days after receiving the notification.

4. Paragraph 12 of the Consent Decree, which requires the District Council to provide the Government with prior written notice of certain actions, is hereby restored and given full effect. Notwithstanding the provision in Paragraph 12 limiting the District Council's obligations to a period of seven years after the termination of the Investigations and Review Officer's term of office, such obligations will continue for as long as the Consent Decree remains in effect, unless otherwise ordered by the Court.

5. Nothing in this Order shall prevent the District Council and any contractor or contractors' association from negotiating or re-negotiating any collective bargaining agreement, side letter, memorandum of understanding, or other agreement, except that if such agreement has the effect of changing the Job Referral Rules or the procedures set forth in Paragraph 3.b. of this Order while the Consent Decree remains in effect, such change or changes shall be subject to compliance with Paragraph 12 of the Consent Decree.

6. Given the provisions of paragraph 5 of this Order, the Government's request that the Court at this time enjoin any aspect of the collective bargaining negotiations that will take place between the District Council, the Intervenors, or other signatory contractors, at the expiration of the current collective bargaining agreements, in 2011 or otherwise, is denied.

7. Except as specifically modified by this Order, the collective bargaining agreements between the District Council or its constituent locals contractors employing carpenters represented by the District Council remain in full and force and effect.

8. The District Council will report to the Government the number of requests made by contractors pursuant to Paragraph 3.b.(iii) of this Order, as well as the name of the requesting contractor, the name of the person requested, the date of the request, and the job site. The first

report made under this paragraph is to be submitted to the Government 60 days after the date of entry of this Order on the docket of the Court. Subsequent reports shall be submitted to the Government 30 days after the end of each calendar quarter.

9. The provisions specified in paragraph 3 of this Order will not apply to any construction contract that was bid, or finally executed, on or before the date this Order was entered on the docket of this Court. Signatory contractors shall be responsible for notifying the District Council in writing of jobs and job sites that are subject to the provisions of this paragraph. The District Council is directed to send the Government copies of such notifications within 7 days of receiving the notification.

10. This Court retains jurisdiction to supervise the implementation of this Order, and to decide any and all issues relating to this Order.

11. The Government may, without prior leave of the Court, issue discovery demands and subpoenas to the District Council, its constituent local unions, the Intervenors, and their contractor members, to obtain evidence, including documents and testimony, relating to their compliance with this Order. Such discovery will be governed by Federal Rules of Civil Procedure 26 though 27. Objections to the Government's demands or subpoenas, in the form of motions to quash, motions for protective orders, or otherwise, will be presented to and resolved by this Court.

12. Nothing in this Order is to be construed as affecting the validity of the Consent Decree.

13. By their participation in the formulation of this Order, the Government, the District Council, and the Intervenors do not waive any right to appeal from the Opinion and this Order.